IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

METRO MEDIA ENTERTAINMENT, LLC           :

    v.                                      :   Civil Action No. DKC 12-0347

RICHARD STEINRUCK                         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this copyright infringement action are motions to dismiss counterclaim and for sanctions filed by Plaintiff Metro Media Entertainment, LLC. (ECF No. 29). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion to dismiss will be granted and the motion for sanctions will be denied.

**I.  Background**

Plaintiff Metro Media Entertainment, LLC, commenced this action on February 6, 2012, by filing a complaint against forty-seven Doe defendants alleged to have infringed Plaintiff's copyright in a pornographic film by downloading and/or uploading the video over the Internet *via* a file-sharing protocol known as BitTorrent. As set forth in a spate of recent opinions in this

court and others across the country, this technology functions as follows:

> BitTorrent facilitates the sharing of large amounts of data across "Peer-to-Peer" networks on the [I]nternet. To begin, an initial user decides to share a file (known as a "seed") with a torrent network. Other users (known as "peers") within the network then connect to the seed file for downloading. Each peer downloads one piece of the seed file at a time. As a piece of the seed file is downloaded, it is typically made available to other peers to download. In other words, every downloader is also an uploader. Thus, as the process continues, peers may receive pieces of the seed file from those who have already downloaded that piece and not necessarily from the initial seeder. This system of multiple pieces of data coming from various peers is called a "swarm." With respect to any particular swarm, an alphanumeric representation (known as a "hash") of the shared file remains the same. A hash is essentially a "forensic digital fingerprint" that identifies a particular copy of a shared file.

*Third Degree Films, Inc. v. Does 1-108*, No. DKC 11-3007, 2012 WL 1514807, at *1 (D.Md. Apr. 27, 2012) (internal footnotes and citations omitted).

Through this process, each of the "peers" participating in a given "swarm" exposes his or her Internet Protocol address ("IP address") to the outside world. The owners of copyrights in films such as *My Baby Got Back! #44* – the subject of the instant case – retain the services of law firms or investigators, such as the Copyright Enforcement Group, LLC –

2

the firm retained by the instant plaintiff – to monitor and record the information revealed by the infringers. Typically, a lawsuit is then filed against all swarm participants believed to be located within the jurisdiction of a given court, along with a request for early discovery in which the plaintiff seeks to serve subpoenas on Internet Service Providers ("ISPs") associated with the alleged infringers in order to learn the identity of subscribers.[1]  Once this information is obtained, an offer of settlement invariably follows in which the plaintiff advises the subscriber of the infringing IP address that he or she may avoid the specter of having his or her name publicly associated with the unauthorized downloading of pornography by promptly remitting a substantial payment to counsel for the plaintiff.

---

[1] A number of courts have recognized a distinction between the subscribers of the IP addresses associated with the infringing activity and the infringers themselves. *See, e.g., Discount Video Center, Inc. v. Does 1-29*, --- F.R.D. ----, 2012 WL 3308997, at *3 (D.Mass 2012) ("While ultimately the Plaintiff may determine that a meaningful number of the subscribers are also the infringing Defendants, the Plaintiff does not now know that to be the case, as to any individual subscriber, nor will it know that simply as a result of having received the names and addresses of the subscribers."). These courts have found that obtaining the name of a subscriber from an ISP is merely "the first step in the Plaintiff's effort to determine the identity of the infringer," *id.* at *5, and have required additional evidence before an amended complaint providing the names of alleged infringers may be filed. Others, including this court, have permitted the plaintiff to name the subscribers as defendants, subject to ultimate proof that the subscribers are, in fact, the infringers.

Recognizing the practical difficulties presented by joining so many defendants in a single lawsuit, as well as "the risk of extortionate settlement, especially when joinder is being used to that end," *Third Degree Films*, 2012 WL 1514807, at *4 (citing *SBO Pictures, Inc. v. Does 1-3036*, No. 11-4220 SC, 2011 WL 6002620, at *4 (N.D.Cal. Nov. 30, 2011)), courts in this district have severed the defendants in these cases and dismissed without prejudice all except Doe 1.  Moreover, with respect to the remaining defendants, this court directed that future filings containing identifying information be made under seal.  Thus, in theory, the risk of extortionate settlement was substantially abated, as the remaining defendants, who might have otherwise felt compelled to settle in order to avoid embarrassment or reputational harm, were free to appear to defend the suits without having to reveal their identities, at least initially.

So it was, in the instant case, that the court issued a *sua sponte* order on May 7, 2012, severing the forty-seven defendants named in the complaint and dismissing all except Doe 1, further directing that "all documents filed in this action that contain Doe 1's identifying information shall be filed under seal." (ECF No. 17, at 2).  Days later, Plaintiff's counsel transmitted a settlement offer to the sole remaining defendant, advising, in part:

> Discovery was authorized by the United States federal district court in the above-identified case relating to the identities of the subscribers whose [I]nternet accounts were allegedly used to download from and/or make available on the Internet unauthorized copies of [*My Baby Got Back! #44*] in violation of the U.S. Copyright Act (17 U.S.C. §§ 101 et seq. You were identified as one of those subscribers.

(ECF No. 23-3). After observing that 17 U.S.C. § 504(c) authorizes statutory damages of up to $150,000 for a willful violation, Plaintiff's counsel stated, "[o]n behalf of Plaintiff, we will formally name you as a defendant (i.e., as an alleged infringer of Plaintiff's copyright in [*My Baby Got Back! #44*])," unless a proposed "settlement offer" of $3,500.00 was promptly remitted. (*Id*.).

Doe 1, by counsel, responded by filing an answer and counterclaim in which he publicly revealed his identity as Defendant Richard Steinruck. (ECF No. 23). After emphatically denying any involvement with the downloading or uploading of Plaintiff's film, Defendant alleges in his counterclaim that Plaintiff is taking advantage of "an opportunity to reap undeserved and illegal rewards and to convert [its] copyrighted materials into a cash generating resource . . . by extorting money from those who have done no illegal act, but who cannot risk the opprobrium of being falsely accused of illegally downloading pornography." (*Id*. at ¶ 37). According to

5

Defendant, "[t]he key allegations [contained in the complaint and request for early discovery] used to convince the [c]ourt to authorize the issuance of the subpoena [to Defendant's ISP] were false and Plaintiff misled the [c]ourt in order to further its scheme." (*Id*. at ¶ 41). Defendant characterizes Plaintiff's subsequent settlement offer as an "extortive shakedown letter," which "effectively threatened that unless Mr. Steinruck paid Plaintiff the money demanded . . . [Plaintiff] would make public the identity of John Doe 1 – Mr. Steinruck – as a downloader, copier, and distributor of pornography by litigating the [c]omplaint." (*Id*. at ¶ 45). In Defendant's view, these "actions . . . constitute[] abuse of process under Maryland state law, as well as abuse of process under federal law[,] . . . [and] may also constitute contempt of this [c]ourt, for using [] [c]ourt process to attempt to accomplish an illegal purpose." (*Id*. at ¶ 48 (internal citation omitted)).[2]

---

[2] While the counterclaim purports to raise a claim of abuse of process under federal common law, the parties cite no authority for the proposition that such a cause of action is even cognizable. Indeed, it appears that it is not. *See A.H.D.C. v. City of Fresno*, No. CIV-F-97-5498 OWW, 2004 WL 5866234, at *13 (E.D.Cal. Oct. 1, 2004) ("there is no federal common law abuse of process" (quoting *Adena, Inc. v. Cohn*, No. 00-3041, 2001 U.S. Dist. LEXIS 19186 (E.D.Pa. Nov. 26, 2001); *Wheeldin v. Wheeler*, 373 U.S. 647, 652 (1963)). It is unclear, moreover, whether Defendant intended to raise a counterclaim for civil contempt, but the equivocal assertion that unspecified conduct "may also constitute contempt" is insufficient to state a plausible claim. Thus, the court construes Defendant's

In light of Defendant's self-disclosure, the court issued an order directing "[a]ny interested party . . . to show cause by August 8, 2012, why Doe 1's identifying information should remain sealed or redacted from public view." (ECF No. 24). In response, Mr. Steinruck "acknowledge[d] that by filing his Answer and Counterclaim disclosing his identity he has waived confidentiality and sealing of any documents in this case." (ECF No. 27).

Plaintiff responded to the counterclaim by filing the pending motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), and seeking sanctions related to the filing of a frivolous complaint, pursuant to 28 U.S.C. § 1927. (ECF No. 29). Defendant has opposed both motions (ECF No. 31), and Plaintiff has filed papers in reply (ECF No. 32).

**II. Motion to Dismiss**

 **A. Standard of Review**

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

---

counterclaim as raising a single count of abuse of process under Maryland law.

7

"Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion [s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court need not, however, accept unsupported legal allegations.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1979).  Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Iqbal*,

8


556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**B.  Analysis**

Under Maryland law, an action for abuse of process provides a remedy "for those cases 'in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed.'" *One Thousand Fleet Limited Partnership v. Guerriero*, 346 Md. 29, 38 (1997) (quoting W. Keeton, *Prosser & Keeton on the Law of Torts* § 121, at 897 (5th ed. 1984)). To state a claim for abuse of civil process, the plaintiff must set forth facts which, if proven, would establish:

> [F]irst, that the defendant willfully used process after it has issued in a manner not contemplated by law, *Keys* [*v. Chrysler Credit Corp.*, 303 Md. 397, 411 (1985)]; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process, *Berman* [*v. Karvounis*, 308 Md. 259, 262 (1987)].

*Id*.[3]

---

[3] As will be explained, a claim for abuse of criminal process does not require a showing of damages.

9

The key distinction between abuse of process, on the one hand, and malicious use of process and/or malicious prosecution, on the other, is that "the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." *Wood v. Palmer Ford, Inc.*, 47 Md.App. 692, 705 (1981) (quoting Prosser, Law of Torts 856 (4th ed. 1971)). "[T]here is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." *Palmer Ford, Inc. v. Wood*, 298 Md. 484, 512 (1984) (quoting Prosser, *supra*, at 857). If a party invoking civil or criminal process is "content to use the particular machinery of the law for the immediate purpose for which it was intended, he is not ordinarily liable, notwithstanding a vicious or vindictive motive." *Id*. "But the moment he attempts to attain some collateral objective, outside the scope of the operation of the process employed, a tort has been consummated." *Id*. at 512-13.

The proper analysis of an abuse of process claim, therefore, involves a comparison between the lawful purpose for which the process in question was intended and the improper purpose for which it was actually employed. "The improper purpose usually takes the form of coercion to obtain a

10

collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club." *Wood*, 47 Md.App. at 706-07 (quoting Prosser, *supra*, at 857). Thus, in *Zablonsky v. Perkins*, 230 Md. 365, 370 (1963), the Court of Appeals of Maryland affirmed the trial court's finding of liability for abuse of process where "the defendant . . . attempted to use the State's criminal process as a private collection agency." Similarly, in *Palmer Ford*, 298 Md. at 511, a viable abuse of process claim was based on evidence showing that "it was the purpose of Palmer Ford . . . to use [ ] criminal proceedings to effect collection of the amount claimed from Wood for repairs to his car." While the tort most frequently involves the abuse of criminal process, liability may be premised on the misuse of civil process as well. "A cause of action for civil abuse of process," however, "requires that the plaintiff establish that an arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process." *One Thousand Fleet*, 346 Md. at 45 (citing *Bartlett v. Christhilf*, 69 Md. 219, 231 (1888)); *see also Krashes v. White*, 275 Md. 549, 555 (1975) ("Unlike a plaintiff in a malicious use of civil process suit, the plaintiff in a criminal malicious prosecution action need not prove any special damages, such as arrest or seizure of property.").

Given these parameters, Defendant's abuse of process claim cannot be sustained. Initially, insofar as Defendant complains about the untoward purposes and methods employed by Plaintiff in bringing this suit, his counterclaim sounds as one for malicious use of process, rather than abuse of process. As the court explained in *One Thousand Fleet*, 346 Md. at 39-40:

> The case of *Keys v. Chrysler Credit Corporation*, 303 Md. 397, 494 A.2d 200 (1985), illustrates the differences between malicious use of process and abuse of process. In *Keys*, Anna Keys's wages were attached by a writ of garnishment issued to enforce a judgment that Keys had fully satisfied more than four years earlier. *Id*. at 400, 494 A.2d at 201. . . . Keys sued Chrysler Credit for, *inter alia*, malicious use of process and abuse of process. *Id*. at 402, 494 A.2d at 202. Judge McAuliffe, writing for the Court, concluded that the trial court improperly dismissed Keys's malicious use of process claim because a prior civil proceeding had been instituted by Chrysler Credit against Keys, that the proceeding was instituted without probable cause inasmuch as Chrysler admitted that Keys had fully paid the judgment, that malice may be inferred from a want of probable cause, that the proceeding was terminated in Keys's favor, and that Keys suffered a seizure of her property, *i.e.*, the garnished wages. *Id*. at 408-10, 494 A.2d at 205-07. The Court held, however, that Keys could not maintain an action for abuse of process because there was no evidence of any improper use or perversion of the process after it issued. The Court noted that Keys's "proper complaint in this case is with the *issuance* of the process, . . . and she has no proper proof of an abuse of process." *Id*. at 412, 494 A.2d at 207

12

>    (emphasis added). Thus, an action for abuse
>    of process could not survive.

(Emphasis and second alteration in original). As noted, Defendant alleges that the "key allegations" of Plaintiff's complaint "used to convince the [c]ourt to authorize the issuance of the subpoena were false" and designed to "mis[lead] the [c]ourt in order to further [Plaintiff's] scheme." (ECF No. 23 ¶ 41). An abuse of process claim does not concern whether a complaint was brought, or any court process was issued, in good faith or based on sufficient cause. Allegations such as these could only be actionable as malicious use of process, which requires, *inter alia*, that the prior proceeding was "terminated in favor of the plaintiff." *One Thousand Fleet*, 346 Md. at 37.[4] Because the instant case has not terminated, much less terminated in favor of Defendant, such a claim could not be viable here.

The only facts set forth by Defendant that could potentially support an abuse of process claim relate to the

---

[4] Under Maryland law, a cause of action for malicious use of process has five elements: (1) a prior civil proceeding was instituted by the defendant; (2) that proceeding was instituted without probable cause (*i.e.*, "a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of"); (3) the prior proceeding was instituted by the defendant with malice (*i.e.*, "the party instituting proceedings was actuated by an improper motive"); (4) the proceedings terminated in favor of the plaintiff; and (5) a "special injury" resulted that "would not necessarily result in all suits prosecuted to recover for a like cause of action." *One Thousand Fleet*, 346 Md. at 37.

13

issuance of the subpoena to Defendant's ISP and the ensuing settlement letter transmitted by Plaintiff.  The lawful purpose of the subpoena was to compel the ISP to divulge Defendant's name and address, which, in turn, would enable Plaintiff to file an amended complaint naming the proper defendants and requesting the issuance of summonses.  While the fact that Plaintiff also used that information to convey a settlement offer is clearly "outside the scope" of the subpoena, the purpose of the settlement letter was not "to attain some collateral objective." *Palmer Ford*, 298 Md. at 512-13.  Indeed, it proposed to resolve the suit.  The only threat contained in Plaintiff's "extortive shakedown letter," as Defendant calls it, is that Plaintiff would "formally name [Mr. Steinruck] as a defendant" if he declined to settle.  (ECF No. 23-3).  Insofar as this constitutes a "threat," it is no different from those routinely presented in demand letters to potential defendants prior to the filing of law suits in court.  While it is likely true, given the salacious nature of the film, that Plaintiff had substantial leverage in settlement discussions, there is nothing wrong with presenting a defendant with a settlement offer prior to proceeding with litigation, and the fact that Plaintiff may have had an ulterior motive is inconsequential in the abuse of process analysis.  *See Wallace v. Mercantile County Bank*, 514 F.Supp.2d 776, 793 (D.Md. 2007) ("[n]o liability is incurred

14

where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive may be") (quoting *One Thousand Fleet*, 346 Md. at 38 (internal marks omitted)). Moreover, Defendant has not suffered an "arrest or a seizure of property," as required to establish a claim of abuse of civil process under Maryland law. *One Thousand Fleet*, 346 Md. at 48. To the extent that he has suffered reputational harm from the association of his name with the unauthorized downloading and/or uploading of pornography, his injury was self-inflicted. A procedure was put in place by which Defendant could have vindicated his vehement denials of liability without publicly revealing his identity. He elected to reveal his name, however, and he cannot now reasonably assert that damages attributable to this revelation were caused by Plaintiff.

In sum, the facts presented in the counterclaim do not support a cause of action for abuse of process. Accordingly, Plaintiff's motion to dismiss will be granted.

### III. Motion for Sanctions

Observing that Defendant's counsel has unsuccessfully advanced virtually identical counterclaims in other courts, Plaintiff alleges that the instant counterclaim is frivolous and that attorneys' fees and costs associated with litigating the motion to dismiss should be awarded pursuant to 28 U.S.C. §

1927.  Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  "Courts have imposed sanctions under this section only when there is a clear showing of bad faith: 'when the attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay.'"  *Dobkin v. Johns Hopkins University*, Civ. No. HAR 93-2228, 1995 WL 167802, at *2 (D.Md. Mar. 24, 1995) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2nd Cir. 1986)).

The instant record does not reflect that Defendant filed his counterclaim in bad faith.  Issues with the methods and motives of plaintiffs in suits of this nature are well-documented, and several courts have suggested that, under certain circumstances, an actionable claim could be viable. *See, e.g.*, *Third Degree Films v. Does 1-47*, --- F.R.D. ----, 2012 WL 4498911, at *1 (D.Mass. Oct. 2, 2012) ("it appears that in at least some of these cases, adult film companies may be misusing the subpoena powers of the court, seeking the identities of the Doe defendants solely to facilitate demand letters and coerce settlement, rather than ultimately serve process and litigate the claims"); *Raw Films, Ltd. v. Does 1-32*,

16

No. 3:11cv532-JAG, 2011 WL 6182025, at *2 (E.D.Va. Oct. 5, 2011) ("The plaintiffs seemingly have no interest in litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does").  The fact that some courts have dismissed counterclaims does not necessarily mean that similar claims presented in other cases are frivolous.[5]  In any event, "[t]he unambiguous text of § 1927 aims only at attorneys who *multiply* proceedings"; this provision "focuses on the conduct of the litigation and not on its merits."  *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (emphasis in original).  Here, there is no basis for finding that defense counsel unreasonably multiplied the proceedings.  Accordingly, Plaintiff's motion for sanctions will be denied.

---

[5] Plaintiff attaches to its motion the transcript of a proceeding in the United States District Court for the District of Columbia in which an abuse of process counterclaim raised by Defendant's counsel was dismissed.  (ECF No. 29-3).  According to Plaintiff, the transcript "speaks for itself" with regard to that court's finding that the claim was frivolous.  (ECF No. 29-1, at 6).  To the contrary, the transcript reveals that the court simply found that the facts presented did not support liability in that case.  While the court later found that counsel offered a "frivolous excuse" with respect to a different motion (*id*. at 11), he made no such finding with regard to the defendant's counterclaim.  Indeed, the plaintiff's motion for sanctions related to that filing was denied.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion to dismiss counterclaim will be granted and its motion for sanctions will be denied. A separate order will follow.

```
         _____/s/_____
         DEBORAH K. CHASANOW
         United States District Judge
```