IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

METRO MEDIA ENTERTAINMENT, LLC      :

                                    :

    v.                              :   Civil Action No. DKC 12-0347

                                    :

RICHARD STEINRUCK                   :

                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this copyright infringement case is an objection to a discovery ruling made by United States Magistrate Judge Charles B. Day on January 29, 2013 (ECF No. 80), and a motion for leave to file a second amended complaint (ECF No. 85) filed by Plaintiff Metro Media Entertainment, LLC. The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the objection will be overruled and the motion will be denied.

I.   **Background**

Plaintiff commenced this action on February 6, 2012, by filing a complaint against forty-seven Doe defendants alleged to have infringed its copyright in a pornographic film by downloading and/or uploading the video over the Internet *via* a file-sharing protocol called BitTorrent. On the same date, Plaintiff filed a motion for expedited discovery, seeking the

issuance of subpoenas directing internet service providers to identify the customers associated with the infringing IP addresses. That motion was granted on March 20. Subsequently, however, the court severed the forty-seven defendants referenced in the complaint and dismissed without prejudice all except Doe 1, further directing that "all documents filed in this action that contain Doe 1's identifying information shall be filed under seal." (ECF No. 17, at 2). Doe 1 responded by filing an answer and counterclaim in which he publicly revealed his identity as Defendant Richard Steinruck.[1]

On July 30, 2012, a scheduling order was entered, which provided, *inter alia*, a September 13 deadline for moving for joinder of additional parties and amendment of the pleadings. (ECF No. 28). Ten days prior to that deadline, Plaintiff moved for an extension of time, citing its discovery that "a large number of copyright infringements have been committed through Steinruck's IP address, which will likely require an amendment of the pleadings in the future." (ECF No. 36-2, at 1). That motion was denied by a paperless order issued September 13, albeit "without prejudice to the filing of a later motion for leave to amend." (ECF No. 40).

---

[1] Plaintiff moved to dismiss the counterclaim, and the court granted that motion by a memorandum opinion and order issued December 14, 2012. *See Metro Media Entertainment, LLC v. Steinruck*, --- F.Supp.2d ----, 2012 WL 6562774 (D.Md. 2012).

Shortly after discovery commenced, the parties became embroiled in a number of disputes. On October 14, Defendant filed a motion to compel discovery (ECF No. 42), which was denied for failure to comply with Local Rule 104.7 (ECF No. 45). On October 22, Defendant filed an amended certificate under Local Rule 104.7, incorporating by reference the prior motion. (ECF No. 46). Nine days later, Plaintiff filed a motion for protective order. (ECF No. 48). That was followed by Plaintiff's motions to compel (ECF No. 59) and for extension of the discovery deadline (ECF No. 65). On November 2, the case was referred to Judge Day for resolution of all discovery and related scheduling matters.

Judge Day held a hearing on the pending motions on January 29, 2013. Following that hearing, he issued a series of paperless orders, including, as relevant here, an order granting in part and denying in part Plaintiff's motion for protective order. (ECF No. 75). On February 12, Plaintiff filed the pending objection (ECF No. 80), which was followed by Defendant's opposition papers (ECF No. 83) and Plaintiff's reply (ECF No. 89). On March 15, Plaintiff moved for leave to file a second amended complaint, seeking to add an additional defendant and two new causes of action. (ECF No. 85). Defendant filed an opposition on April 1. (ECF No. 89).

## II.  Objection to Protective Order Ruling

### A.  Standard of Review

Under 28 U.S.C. § 636(b)(1), non-dispositive pretrial matters may be referred to a magistrate judge for hearing and determination.  A district judge may modify or set aside any portion of a magistrate judge's non-dispositive ruling "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  *Id.; see also* Fed.R.Civ.P. 72(a); Local Rule 301.5.a.  Under the clearly erroneous standard, the reviewing court is not to ask whether the finding is the best or only conclusion permissible based on the evidence, nor is it to substitute its own conclusions for that of the magistrate judge.  *See Tri-Star Airlines, Inc. v. Willis Careen Corp.*, 75 F.Supp.2d 835, 839 (W.D.Tenn. 1999).  Rather, the court is only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence.  *Id*.  It is not the function of objections to discovery rulings to allow wholesale relitigation of issues resolved by the magistrate judge."  *Buchanan v. Consol. Stores Corp.*, 206 F.R.D. 123 (D.Md. 2002).

### B.  Analysis

By an email dated October 13, 2012, counsel for Plaintiff sent defense counsel a proposed protective order, asserting that "[t]he depositions of your clients will include personal details

that should not be divulged, and the same applies to my client."
(ECF No. 48-4). Defense counsel did not consent to the proposed
order. Nevertheless, in response to Plaintiff's supplemental
interrogatories and requests for production of documents,
submitted October 20, Defendant objected to multiple requests on
the ground that "[t]his information is sensitive and contact
information will only be disclosed if a protective order is
entered by the Court calling for nondisclosure of the
information by [Plaintiff]." (ECF No. 48-6, at 4).

Upon receipt of Defendant's supplemental discovery
responses, Plaintiff's counsel sent defense counsel an email
observing that Defendant had "on multiple occasions refused to
enter into a protective order," and suggesting that counsel
draft a proposed order to his liking. (*Id.*). Defense counsel
responded:

> Protective orders should be rarely entered
> and then only to protect on a specific
> factual issue, such as someone's personal
> financial information that is for attorney
> eyes only.
>
> You appear to want a protective order of
> broad applicability to prevent anyone from
> learning anything about the details of our
> pretrial information, and that is not in the
> public interest and not designed to satisfy
> the requirements of Rule 26.
>
> If you really believe that a protective
> order is called for by Rule 26 in this case,
> tell me specifically the facts that would
> cause annoyance, embarrassment, oppression,

> or undue burden or expense for anyone and
> tell me who the persons are who have such
> interests that need protection and what
> factual information you believe fills that
> requirement.

(*Id*. at 3-4). When Plaintiff's attorney pointed out that Defendant's discovery responses indicated that a protective order was needed, defense counsel doubled-down on his prior position: "I have asked – and I think more than once – who the protective order is to protect and what Rule 26 objective is it aimed at. . . . Please tell me so I can understand why you think you need a protective order." (*Id*. at 3). Plaintiff's counsel responded:

> I suggested that we agree on a protective
> order to make sure that neither Plaintiff's
> nor Defendant's private information gets
> published. Since you rejected my [prior
> proposed] protective order, and refused to
> answer discovery because there is no
> protective order in place, I asked you to
> suggest a protective order.

(*Id*. at 2). Defense counsel replied, "At this point I do not anticipate any information being disclosed that would require a protective order for my client." (*Id*. at 1).

Frustrated by these negotiations, Plaintiff filed, on October 31, 2012, a motion for "(i) an order regarding confidentiality of discovery material and inadvertent disclosure of privileged material, and (ii) an order allowing disclosure, pursuant to Defendant's discovery request, of certain Internet

subscribers' identities as 'attorney's eyes' only documents under confidentiality order." (ECF No. 48). In an accompanying memorandum, Plaintiff explained:

> Defendant will be taking depositions and other discovery of Plaintiff and/or Plaintiff's agent [Copyright Enforcement Group] Tek International ["CEG"]. Further, Defendant has served upon Plaintiff additional written discovery demands, at least one of which (i.e., a third set of interrogatories) would require disclosure of Plaintiff's confidential information. Before complying with such discovery, Plaintiff and its agent are in need of an order protecting the confidentiality of much of their information.
>
> Furthermore, because of recently discovered information that an individual[,] P.S.[,] may be related to the alleged copyright infringements in intimate cooperation with Defendant Steinruck, a protective order will protect the personal matters of P.S. and Defendant Steinruck, who has already refused to make certain discovery because of an absence of a protective order.

(ECF No. 48-1, at 1-2 (internal emphasis removed)). Plaintiff attached to its motion two proposed protective orders: one prohibiting the disclosure of confidential information designated by the parties, and another protecting the identities of the dismissed Doe defendants, which had been requested by Defendant through discovery. (ECF Nos. 48-2, 48-3).

In responding to the motion, Defendant argued that "[t]he objective of the protective order sought by Plaintiff [] is to

make sure that discovery information from this case, which is relevant and directly on point for effective defense and counterclaims in other cases by pornographic film companies filing multi-defendant John Doe cases to extort money from innocent citizens, cannot be used by other innocent citizens to defend themselves in these similar cases." (ECF No. 56, at 1). He asserted that "Jon Nicolini, Vice President of Technology for [CEG], . . . and a principal declarant of technical information filed as an exhibit to the Plaintiff's complaint in at least two of these cases, refuses through his attorney to be deposed without a protective order that has a provision that the information may not be used for any purpose except this suit[.]" (*Id.* at 1-2 (internal emphasis removed)). According to Defendant, "[i]n refusing this protective order, [he] is attempting to enable similar defendants to defend and/or file a counterclaim against these companies without requiring extensive finances and resources which many cannot afford." (*Id.* at 2).[2] Although he disputed the "need for a general overarching protective order in this case" (*id.* at 3), Defendant attached

---

[2] Defense counsel specifically cited a case pending in the United States Court of Appeals for the D.C. Circuit in which defense counsel represents the appellant, arguing that "[e]vidence in the case here will be very relevant to [the D.C. case] when it is likely reversed and sent back for trial." (ECF No. 56, at 2 n. 1).

two proposed orders purporting to modify the proposals attached to Plaintiff's motion.

At the hearing on January 29, Judge Day initially pressed Plaintiff's counsel to identify the information he sought to protect. Counsel asserted that an order was necessary because depositions would reveal the "confidential business processes of CEG, . . . what the underlying technology is, how it works, what software is applied, and how it tracks[.]" (ECF No. 84, at 53). When the court inquired as to why Plaintiff was seeking to protect the interests of another business entity, counsel responded, "[b]ecause CEG is the company that actually prepared the tracking data in this case, . . . [which] relates to the business of [Plaintiff], because [Plaintiff] has to continue to protect its copyrights." (*Id*.). Plaintiff's counsel confirmed that there were "no trade secrets, things like that, that [Plaintiff] is concerned with." (*Id*.).

Having first argued in favor of a protective order to protect the interests of CEG, Plaintiff next asserted that an order was necessary to protect Defendant:

> [T]his issue of the protective order . . .
> ties into two other issues. One of them is
> that [Plaintiff is] seeking discovery of
> computers. We have not had access to the
> computers of Mr. Steinruck yet. So we
> believe that it is also in the defendant's
> interest to protect information. . . .
> Furthermore, since we have now discovered
> that there is a particular individual, which

> I identified as P.S., and it relates to
> numerous activities that I would like not to
> name at this point in the interest of
> decorum. But, they involve . . . highly
> sensitive issues[,] . . . particularly
> [insofar as] this individual[,] P.S.[,] is
> concerned. So I believe it is very much in
> the interest of the defendant to have a[]
> protective order in place to ensure that
> this information does not become public.

(*Id.* at 54).

Consistent with the upside-down nature of the proceedings,

Defendant then withdrew his opposition to a protective order:

> We are not opposing the insertion of a
> protective order. And the protective order
> that we attach to our response, our
> opposition, is very similar in most of the
> basic, what I will call the boilerplate,
> provisions to what [Plaintiff] proposed. I
> have identified in red the difference. And
> if I could hand the Court one and
> [Plaintiff's counsel] one, it may help us to
> discuss it in practical terms, because . . .
> I think it boils down to a very simple
> question . . . [:] [Plaintiff] does not want
> any of this information to be available for
> any other purpose to any other party,
> including us, if we want to use it for
> anything else or if some other lawyer, who
> is representing some poor citizen, says I
> can't afford to go to California to take Mr.
> Nicolini's deposition; can I get your
> deposition. [Plaintiff] doesn't want that,
> because their premise is to make it very
> difficult to defend a case. So all we want
> to do is say the protective order will
> always be subject to the Court authorizing
> use or distribution. And that's what we
> have done.

(*Id.* at 55).

With respect to the overriding issues presented by the parties, Judge Day ruled as follows:

> I think in principle we are saying something similar now, which is different than my understanding coming to the bench. I am not inclined to allow information in this case to be haphazardly available to other people in other cases. And so I think that is consistent with the plaintiff's view. And I also hear it now consistent with the defense's view. I think that to the extent that the Court issues a protective order, it will be limited to the use in this case only. And to the extent that there is another plaintiff, another day, and another place that wishes to access any of that information, they will have to file a motion with this Court to obtain that information. And this Court would be in the best position to balance the interests, the competing interests, of those involved.

(*Id.* at 56).

The court then commenced a "line by line discussion" of the protective order, using the red-lined version provided by defense counsel. (*Id.*). Paragraph five of Defendant's draft read, "Confidential information shall not be used or shown, disseminated, copied, or in any way communicated to anyone for any purpose whatsoever, except as provided for below or as authorized by this Court or another court of competent jurisdiction." (ECF No. 56-2 ¶ 5). Plaintiff's counsel objected to this language insofar as it "contradict[ed] paragraph number 19," but otherwise found it "sufficient . . . [i]f it is only upon a court order[.]" (ECF No. 84, at 57).

11

Upon turning to paragraph nineteen, the court agreed with Plaintiff that the proposed language was inconsistent and, with the consent of defense counsel, ordered that the paragraph be stricken. (*Id*. at 59). During a subsequent discussion regarding the procedure for making objections to confidential designations, Plaintiff's counsel argued, "we should stick to the same formula that is provided in the [local] rules." (*Id*. at 61). Again, Judge Day agreed: "I am going to require a modification of this subparagraph (a). It is to track the sample stipulated order regarding confidentiality of discovery material under the local rules. It shall basically cut and paste subsection 1(d) and all of its subparts." (*Id*. at 62). To eliminate the risk of any confusion, the court read into the record the language provided in the relevant subsection of the local rules.

Plaintiff further objected to the inclusion of Defendant's proposed paragraph twenty, which recited:

> Notwithstanding any provision of this Protective Order, where counsel believe confidential information or documents, either on its face or in conjunction with other information, indicates a violation or potential violation of law – criminal, civil, or regulatory in nature – the relevant information or documents may be disclosed to the appropriate federal, state, or local law enforcement authority or other appropriate agency charged with the responsibility of investigating or prosecuting such a violation or enforcing or

> implementing such law. Any information so
> disclosed is not subject to the terms of
> this Protective Order.

(ECF No. 56-2 ¶ 20). Plaintiff argued that this paragraph should be stricken "because it is covered by paragraph 5." (ECF No. 84, at 69). The court observed that paragraph five "speaks to judicial actions," while paragraph nineteen "is really talking about regulatory and other federal conduct[.]" (*Id.* at 69-70). Defense counsel then asserted:

> I will give you an example, Your Honor. If
> Mr. Steinruck found, based on facts, that
> [Plaintiff] was somebody who was violating
> criminal laws against him, he ought to be
> able to go to the FBI, if he wants to,
> without having to come to the Court and ask
> permission. That's basically what this
> covers. For example, if somebody had broken
> into his house surreptitiously for some
> reason or other, you know.

(*Id.* at 70). The court agreed with Defendant, stating, "I am going to leave 20 in." (*Id.*).[3]

At the conclusion of the in-court editing process, defense counsel asserted that he would draft a corrected version of the order, send it to Plaintiff's counsel for approval, and that it

---

[3] The court previously denied Defendant's motion to compel disclosure of information about the Doe defendants, thus rendering moot the issue of a protective order with respect to that information. (ECF No. 84, at 34). Nevertheless, Plaintiff clarified, during the protective order portion of the hearing, that an order would not be necessary to protect the identities of the Doe defendants. The court confirmed that "[t]he identities of the other Does will not be revealed at this time." (*Id.* at 70).

would then be submitted to the court. Judge Day asserted that,
upon the electronic filing of a stipulated version of the
corrected protective order, he would enter the order. Following
the hearing, the court entered a paperless order granting in
part and denying in part Plaintiff's motion.

The stipulated protective order was never filed;
consequently, an order was never entered. Instead, on February
10, defense counsel filed a request for "discovery assistance"
from Judge Day. (ECF No. 79). With respect to the protective
order, the request recites:

> [A]t the January 29, 2013[,] hearing[,] you
> went over the two versions of the protective
> order proposed by counsel and meticulously
> orally edited the version handed up to you,
> which had the disputed portions highlighted
> in red. When you finished with your
> rulings, we had a protective order that
> needed only fresh typing to implement the
> edits you ordered. I prepared such a clean
> copy implementing your orders and sent it to
> [Plaintiff] for review and agreement that it
> was accurate. . . . [Plaintiff] has refused
> to accept the retyped order or act on my
> request. Instead, [Plaintiff] demurred
> improperly by suggesting that I confer with
> Ira Siegel, counsel for two witnesses in
> California whose deposition[s] are planned
> for March 12-14 to see if he had changes to
> suggest.[4] . . . I pointed out to
> [Plaintiff's counsel] that the protective
> order was subject to implementation by

---

[4] Mr. Siegel is counsel for the CEG, the entity that
monitors use of Plaintiff's copyrights. On February 13, he
filed a motion for admission *pro hac vice* as counsel for
Plaintiff. (ECF No. 81). That motion was granted the following
day. (ECF No. 82).

> counsel for the parties, not counsel for
> future witnesses. I have heard nothing in
> response.

(ECF No. 79, at 2).

Rather than respond to Defendant's request, Plaintiff filed the pending objection two days later, raising three issues. First, he contends, "[u]nfortunately, and erroneously, the Magistrate Judge approved the wording in [paragraph five of] Defendant's version [of the protective order] that states [that] Confidential Information (including 'Confidential – Attorney's Eyes Only') can be used or disclosed as allowed 'by this Court or another court of competent jurisdiction.'" (ECF No. 80, at 1-2 (internal emphasis, marks, and citations removed)). Furthermore, according to Plaintiff, Judge Day "erroneously approved the [] wording from [paragraph] 20 of the order proposed by Defendant":

> [T]hat wording, which is not even hinted at
> in this Court's Model Protective Order,
> allows Defendant's counsel to self-servingly
> believe that confidential information
> "indicates a violation or potential
> violation of law – criminal, civil, or
> regulatory in nature" and then the terms of
> the Confidentiality Order effectively become
> nil at the discretion of Defendant's counsel
> – again, even after this case is terminated.

(*Id*. at 4 (internal emphasis, marks, and citation omitted)). Finally, Plaintiff complains that the draft order submitted by defense counsel "either inadvertently eliminated the protection

for 'Confidential-Attorneys' Eyes Only' material that Defendant had agreed to and was approved by the Magistrate Judge, or worse." (*Id.* at 5).

With respect to Plaintiff's argument concerning the use of discovery material in other litigation, Defendant contends that "Judge Day agreed with defense counsel that there may be cases where other defendants should be able to have access to discovery information unearthed in this case," and that "[a]ny legitimate concern by Plaintiff about the confidentiality of the evidence being protected from random publicity can be protected by the protective order approved by Judge Day." (ECF No. 83, at 3-4). Regarding the language of paragraph twenty – *i.e.*, addressing circumstances in which confidential information may be disclosed to law enforcement – Defendant asserts:

> The provision allowing disclosure of confidential information covered by this protective order to law enforcement authorities was intended to permit cooperation with law enforcement where criminal conduct may be involved. One such crime, extortion, may be at issue in these cases[,] particularly where a number of federal district judges have already concluded that there is extortion in at least some of these pornographic film company copyright cases. . . . Plaintiff's suggestion that such a provision would render confidentiality "nil" is utter hyperbole. Yet, Defendant is willing to fine tune the language to assure that only a lawyer would be the one to make such a disclosure.

(*Id.* at 4-5). Defense counsel acknowledged making "an honest and unintentional mistake of dropping two subparagraphs of language from the 'Attorney Eyes Only' provisions agreed to by Judge Day when counsel consolidated the rulings . . . into a clean draft of the protective order[.]" (*Id.* at 2). Defendant attached to his opposition papers a revised copy of the protective order, including the inadvertently omitted information.[5]

Plaintiff's arguments regarding the rulings as to paragraphs five and twenty of the proposed protective order were not presented to Judge Day at the January 29 hearing. Indeed, with respect to paragraph five, Plaintiff's counsel noted his agreement as to the wording, objecting only that there was contradictory language contained in paragraph nineteen. When the court agreed with this position, striking paragraph nineteen, counsel was fully satisfied, and Plaintiff may not now argue otherwise. *See Maxwell v. South Bend Work Release Center*, No. 3:09-CV-008-PPS-CAN, 2010 WL 4318800, at *2 (N.D.Ind. Oct. 25, 2010) ("Arguments not raised before a magistrate judge and raised for the first time in the objections filed before the district judge are waived") (citing *United States v. Moore*, 375

---

[5] Upon the court's direction, Plaintiff filed a reply in which it did not object to the language contained in the corrected version of the protective order attached to Defendant's opposition papers. As to all other issues, however, Plaintiff essentially restated its prior position.

F.3d 580, 584 n. 2) (7th Cir. 2004); *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000)). As to paragraph twenty, Plaintiff objected to its inclusion to the extent that it concerned matters already covered under paragraph five. When Judge Day opined that, in fact, there was a distinction between the circumstances of disclosure permitted under the two paragraphs, Plaintiff's counsel voiced no further objection.

Even if Plaintiff had raised his objections before the magistrate judge, he has not established that that the decision to include these paragraphs was clearly erroneous. Regarding the extent to which a protective order may be modified to permit use of protected information in other litigation, the United States District Court for the Middle District of North Carolina addressed a similar issue in *SmithKline Beecham Corp. v. Synthon Pharmaceuticals, Ltd.*, 210 F.R.D. 163, 166 (M.D.N.C. 2002). The court explained:

> Courts have the inherent power to modify protective orders, including protective orders arising from a stipulation by the parties. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990), *cert. denied sub nom*, *American Special Risk Ins. Co. v. Rohm & Haas Co.*, 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991); *see Jochims v. Isuzu Motors, Ltd.*, 148 F.R.D. 624, 630 (S.D.Iowa) (collecting cases), *modified by*, 151 F.R.D. 338 (S.D.Iowa 1993). Therefore, the fact that the instant protective order does not contain a clause allowing use of confidential material in other litigation,

> while not irrelevant, does not bar the Court
> from modifying the protective order to allow
> such use.

*Id.* Here, the language of paragraph five, providing an exception from the prohibition of disclosure of confidential information "as authorized by this Court or another court of competent jurisdiction," is entirely consistent. Plaintiff's primary complaint is that Defendant intends to make discovery available to other defendants in similar cases. This is, however, "an appropriate goal under the Federal Rules of Civil Procedure, which are intended to 'secure the just, speedy, and inexpensive determination of every action.'" *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 654 (D.Md. 1987) (quoting *Cipollone v. Liggett Group Inc.*, 113 F.R.D. 86, 91 (D.N.J. 1986)); *see also Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 306 (N.D.Ill. 1993) ("Collaborative use of discovery materials furthers the goal of Rule 1 by eliminating the time and expense of 're-discovery'"). In *Deford*, 120 F.R.D. at 654, the court explained that "[s]haring discovery materials may be particularly appropriate where multiple individual plaintiffs assert essentially the same alleged wrongs against a national manufacturer of a consumer product." The same reasoning would hold doubly true in the instant case, where a corporate copyright owner asserts substantially similar infringement claims against scores of individual defendants. Thus, Plaintiff

cannot show that the magistrate judge's inclusion of language permitting disclosure with court approval was clearly erroneous.

Nor has Plaintiff demonstrated that the court's ruling with respect to the inclusion of paragraph twenty – permitting disclosure of confidential information to "appropriate . . . law enforcement authorit[ies]" "where counsel believe[s] . . . [that it] indicates a violation or potential violation of law" (ECF No. 56-2 ¶ 20) – was in error. While Plaintiff appears to have good cause for concern that this language would permit defense counsel to disclose confidential information based on his belief that Plaintiff's litigation tactics constitute "extortion" (ECF No. 83, at 4), this court has specifically found otherwise in this case. *See Metro Media Entertainment*, 2012 WL 6562774, at *4-5 (finding no abuse of process or malicious use of process in Plaintiff's use of subpoenas). To the extent that Defendant might disclose such information to authorities on that basis, he does so at his own peril, as he would risk a possible contempt finding.

Finally, insofar as Plaintiff complains about the omission of certain language in the draft order submitted by Defendant for Plaintiff's approval, there is essentially nothing for the court to review. Because the proposed language was never agreed to, it was never submitted to Judge Day and no order was ever issued. Moreover, defense counsel has attached to Defendant's

opposition papers a corrected version of the order, containing the language that he purports was inadvertently omitted in the prior draft. In its reply, Plaintiff does not argue that this language is inaccurate. Thus, there appears to be no disagreement.

Accordingly, Plaintiff's objections to Judge Day's order granting in part and denying in part Plaintiff's motion for protective order will be overruled.

### III. Motion for Leave to File a Second Amended Complaint

On March 15, Plaintiff filed the pending motion for leave to file a second amended complaint, seeking to add Defendant's son, Patrick Steinruck, as a defendant in this action and to raise additional causes of action for secondary infringement and negligence. (ECF No. 85-1). While Plaintiff cites Federal Rule of Civil Procedure 15(a) as the bases of its motion, it is undisputed that the deadline for moving for amendment or joinder of additional parties under the scheduling order expired as of September 13, 2012. The practical effect of this point is that Plaintiff's motion triggers both Rule 15(a), governing amendments to pleadings, and Rule 16(b), governing modification of the schedule.

The standards for satisfying these two rules are at odds. Rule 15(a)(2) provides, in pertinent part, that "leave shall be freely given when justice so requires," while Rule 16(b)(4)

states that "[a] schedule may be modified only for good cause
and with the judge's consent."  The Fourth Circuit resolved this
tension in *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298
(4th Cir. 2008):

> Given their heavy case loads, district
> courts require the effective case management
> tools provided by Rule 16.  Therefore, after
> the deadlines provided by a scheduling order
> have passed, the good cause standard must be
> satisfied to justify leave to amend the
> pleadings.  This result is consistent with
> the rulings of other circuits.  *See
> O'Connell v. Hyatt Hotels of Puerto Rico*,
> 357 F.3d 152, 154-55 (1st Cir. 2004); *Parker
> v. Columbia Pictures Indus.*, 204 F.3d 326,
> 340 (2d Cir. 2000); *S & W Enters. v. South
> Trust Bank of Ala.*, 315 F.3d 533, 536 (5th
> Cir. 2003); *Leary v. Daeschner*, 349 F.3d
> 888, 906 (6th Cir. 2003); *In re Milk Prods.
> Antitrust Litig.*, 195 F.3d 430, 437-38 (8th
> Cir. 1999); *Sosa v. Airprint Sys., Inc.*, 133
> F.3d 1417, 1419 (11th Cir. 1998).

Rule 16(b)'s "good cause" standard focuses on the
timeliness of the amendment and the reasons for the tardy
filing.  Because a court's scheduling order "'is not a frivolous
piece of paper, idly entered, which can be cavalierly
disregarded by counsel without peril,'" *Potomac Elec. Power Co.
v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D.Md. 1999)
(quoting *Gestetner v. Case Equip. Co.*, 108 F.R.D. 138, 141
(D.Me. 1985)), a movant must demonstrate that the reasons for
the tardiness of its motion justify a departure from the rules
set by the court in its scheduling order.  Thus, the primary

consideration of the court in addressing whether "good cause" has been shown under Rule 16(b) relates to the movant's diligence. Lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard." *West Virginia Housing Dev. Fund v. Ocwen Technology Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001). "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995).

Plaintiff has provided no explanation for its delay of approximately six months after expiration of the deadline for amendment of pleadings or joinder of additional parties to file its motion for leave to amend. The record reflects that Plaintiff learned by September 29, 2012, that Patrick Steinruck was living in Defendant's home on the date of the alleged infringement. Nevertheless, it waited well over five months to seek to add him as an additional defendant, and it has failed to make any showing of diligence. Accordingly, Plaintiff has failed to establish good cause for leave to amend and its motion will be denied. This denial will be without prejudice, however, to Plaintiff's right to file an amended motion within fourteen days, addressing the proper standard.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's objections to the magistrate judge's ruling will be overruled and its motion for leave to file a second amended complaint will be denied.  A separate order will follow.

```
_____/s/_____
```
DEBORAH K. CHASANOW
United States District Judge